**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| GLOBAL MERCHANDISING SERVICES, LTD., | ) |
| | ) |
| Plaintiff, | ) Cause No. |
| | ) |
| v. | ) |
| | ) |
| VARIOUS JOHN DOES, JANE DOES and ABC COMPANIES | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**COMPLAINT FOR TRADEMARK INFRINGEMENT**
**AND UNFAIR COMPETITION**

1.      This Court has exclusive jurisdiction over this action under 28 U.S.C. Section 1331 and 1338(a) and 15 U.S.C. Sections 1121, 1125, 1126 and 1116.  This action arises under the Lanham Trademark Act (15 U.S.C. Section 1051, et seq.).

2.      Plaintiff Global Merchandising Services, Ltd. is a private limited liability company organized under the laws of England with a place of business in Los Angeles, California.

3.      Upon information and belief, Defendants Various John Does and Jane Does are residents of or transact and do business in and/or will be present in St. Louis, Missouri on and before July 14, 2018 or are now conspiring to travel and otherwise traveling to the other states listed in Schedule A hereto and are subject to the jurisdiction of this Court.  The identities of the Various John Does and Jane Does are not presently known.

4.      Upon information and belief, Defendants ABC Companies, through their agents, servants and employees, transact and do business in and/or will be present in St. Louis, Missouri,

on and before July 14, 2018 or are now conspiring to travel and otherwise traveling to other states listed in Schedule A hereto and are subject to the jurisdiction of this Court.  The identities of the ABC Companies are not presently known.

## THE PARTIES

5.     Since as early as 1990, Marilyn Manson has used the MARILYN MANSON trademark to identify himself in all phases of the entertainment industry and to distinguish himself from other professional musical performers.

6.     Since as early as 1998, Rob Zombie has used the ROB ZOMBIE trademark to identify himself in all phases of the entertainment industry and to distinguish himself from other professional musical performers.

7.     Rob Zombie and Marilyn Manson have granted Plaintiff the exclusive right to market merchandise, including, but not limited to, clothing, jewelry, photographs and posters bearing the ROB ZOMBIE and MARILYN MANSON names, trademarks, logos, and/or likenesses at concert engagements throughout the United States.

8.     Defendants are numerous independent unlicensed peddlers and  manufacturing and distributing companies who will be attempting to distribute and sell unauthorized bootleg and inferior merchandise embodying the ROB ZOMBIE and MARILYN MANSON names, trademarks, logos and/or likenesses (hereinafter referred to collectively as "Bootleg Merchandise") including, but not limited to, t-shirts outside the confines of the Hollywood Casino Amphitheatre, St. Louis, Missouri on July 14, 2018 and at Rob Zombie and Marilyn Manson concerts on their present concert tour, that are also known as the Twins of Evil concerts, a partial itinerary of which is listed on Exhibit A hereto, in violation of Plaintiff's rights under the Lanham Act.  The identities of these Defendants are not presently known and cannot be known unless they voluntarily permit themselves to be identified.

## BACKGROUND

9.     To date, in excess of 13 Million copies of recordings embodying the performances of Rob Zombie have been sold.  To date, in excess of 20 Million copies of recordings embodying the performances of Marilyn Manson have been sold.

10.     To date, in excess of 1.5 Million Dollars' worth of licensed merchandise bearing the ROB ZOMBIE and MARILYN MANSON names, trademarks, logos and/or likenesses have been sold.

11.     Since as early as 1990, Marilyn Manson has used the MARILYN MANSON mark to identify his services as a musical performer.  Marilyn Manson has sought to distinguish merchandise pertaining to him from merchandise made and sold and pertaining to others by prominently displaying the MARILYN MANSON trademark and/or likeness on t-shirts and other merchandise items associated with Marilyn Manson.

12.     Since as early as 1998, Rob Zombie has used the ROB ZOMBIE mark to identify his services as a musical performer.   Rob Zombie has sought to distinguish merchandise pertaining to him from merchandise made and sold and pertaining to others by prominently displaying the ROB ZOMBIE trademark and/or likeness on t-shirts and other merchandise items associated with Rob Zombie.

13.     Plaintiff has been granted the exclusive license to sell merchandise bearing the ROB ZOMBIE and MARILYN MANSON trademarks, logos and likenesses at Rob Zombie and Marilyn Manson concert engagements throughout the United States including the Twins of Evil tour.

14.     Rob Zombie and Marilyn Manson are embarking on their Twins of Evil concert tour of the United States.  Virtually all of those concerts are or will be sold out.  The Rob Zombie/Marilyn Manson/Twins of Evil concert itinerary, in part, is annexed hereto as Exhibit A.

3

15.     Based upon experience in selling Rob Zombie and Marilyn Manson merchandise, including, but not limited to, t-shirts, at similar concerts and performances throughout the United States, it can be stated with certainty that outside the concerts halls at which Rob Zombie and Marilyn Manson are performing, before, during and after their appearances, Defendants have and will attempt to sell imitation and inferior Bootleg Merchandise.

16.     The sale of the Bootleg Merchandise by Defendants is and will be without Plaintiff's permission or authority.

17.     This unlawful activity results in irreparable harm and injury to Plaintiff in that, among other things, it deprives Plaintiff, Rob Zombie and Marilyn Manson of their absolute right to determine the manner in which the Rob Zombie and Marilyn Manson images are presented to the general public through merchandising; deceives the public as to the origin and sponsorship of such merchandise; wrongfully trades upon and cashes in on the reputations of Plaintiff, Rob Zombie and Marilyn Manson  as well as their commercial value and exclusive rights in their trademarks, and it irreparably harms and injures the reputations of  Rob Zombie, Marilyn Manson and Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION
## Violation of 15 U.S.C. §1125(a) (MARILYN MANSON INFRINGEMENT)

18.     Plaintiff repeats and realleges paragraphs 1 through 17 of this Complaint as if fully set forth herein.

19.     This count arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition entitled "False Designation of Origin and False Descriptions Forbidden," 15 U.S.C. §1125(a), and involves false descriptions in commerce.

20.     The MARILYN MANSON trademark, likeness and logos have been used widely throughout the United States.  As a result of same, the MARILYN MANSON trademark, likeness and logos have developed and now have a secondary and distinctive trademark meaning

to purchasers of goods including, but not limited to, t-shirts. The MARILYN MANSON mark was registered with the United States Patent and Trademark Office on January 10, 1995 in connection with clothing, Registration No. 1,872,575 and has been renewed twice.

21.     The Bootleg Merchandise sold by Defendants, which contains the MARILYN MANSON likeness, logos and/or trademark is of the same general nature and type as the merchandise sold and/or authorized to be sold by Plaintiff.  Because the Bootleg Merchandise is so related to and indistinguishable from authorized merchandise that Plaintiff sells, it is likely to, and is certainly intended to, cause confusion to purchasers.

22.     Defendants, by misappropriating and using the MARILYN MANSON trademark, likeness and logos, have misrepresented and falsely described to the general public the origin and source of the Bootleg Merchandise so as to create the likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of the Bootleg Merchandise sold at Marilyn Manson concert dates.

23.     In addition, Defendants' sale of the Bootleg Merchandise will infringe upon and dilute the MARILYN MANSON trademark and logos.

24.     The Bootleg Merchandise is in most instances of inferior quality and the sale thereof will be damaging to and will dilute the goodwill generated by Marilyn Manson and the reputations that Plaintiff and Marilyn Manson have developed in connection with the sale of legitimate and quality merchandise.

25.     Defendants' unlawful merchandising activities have been and will be conducted without the permission or authority of Plaintiff and said actions constitute express and implied misrepresentations that the Bootleg Merchandise was created, authorized or approved by Plaintiff and/or Marilyn Manson. Defendants have not obtained any license, authority or approval to manufacture, distribute or sell such Bootleg Merchandise.

26.     Defendants' acts are in violation of 15 U.S.C. §1125(a) in that Defendants will use, in connection with goods and services, a false designation of origin and have caused and will continue to cause said goods (the Bootleg Merchandise) to enter into interstate commerce.

27.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, will suffer irreparable harm and injury to Plaintiff's and Marilyn Manson's images and reputations as a result thereof.

## AS AND FOR A SECOND CAUSE OF ACTION
## Violation of 15 U.S.C. §1125(a) (ROB ZOMBIE INFRINGEMENT)

28.     Plaintiff repeats and realleges paragraphs 1 through 17 and 19 through 27 of this Complaint as if fully set forth herein.

29.     This count arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition entitled "False Designation of Origin and False Descriptions Forbidden," 15 U.S.C. §1125(a), and involves false descriptions in commerce.

30.     The ROB ZOMBIE trademark, likeness and logos have been used widely throughout the United States.  As a result of same, the ROB ZOMBIE trademark, likeness and logos have developed and now have a secondary and distinctive trademark meaning to purchasers of goods including, but not limited to, t-shirts. The ROB ZOMBIE mark was registered with the United States Patent and Trademark Office on March 15, 2005 in connection with clothing, Registration No. 2,932,172 and has been renewed once.

31.     The Bootleg Merchandise sold by Defendants, which contains the ROB ZOMBIE likeness, logos and/or trademark of is of the same general nature and type as the merchandise sold and/or authorized to be sold by Plaintiff.  Because the Bootleg Merchandise is so related to and indistinguishable from authorized merchandise that Plaintiff sells, it is likely to, and is certainly intended to, cause confusion to purchasers.

32.     Defendants, by misappropriating and using the ROB ZOMBIE trademark, likeness and logos, have misrepresented and falsely described to the general public the origin and source of the Bootleg Merchandise so as to create the likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of the Bootleg Merchandise sold at Rob Zombie concert dates.

33.     In addition, Defendants' sale of the Bootleg Merchandise will infringe upon and dilute the ROB ZOMBIE trademark and logos.

34.     The Bootleg Merchandise is in most instances of inferior quality and the sale thereof will be damaging to and will dilute the goodwill generated by Rob Zombie and the reputations that Plaintiff and Rob Zombie have developed in connection with the sale of legitimate and quality merchandise.

35.     Defendants' unlawful merchandising activities have been and will be conducted without the permission or authority of Plaintiff and said actions constitute express and implied misrepresentations that the Bootleg Merchandise was created, authorized or approved by Plaintiff and/or Rob Zombie. Defendants have not obtained any license, authority or approval to manufacture, distribute or sell such Bootleg Merchandise.

36.     Defendants' acts are in violation of 15 U.S.C. §1125(a) in that Defendants will use, in connection with goods and services, a false designation of origin and have caused and will continue to cause said goods (the Bootleg Merchandise) to enter into interstate commerce.

37.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, will suffer irreparable harm and injury to Plaintiff's and Rob Zombie's images and reputations as a result thereof.

## AS AND FOR A THIRD CAUSE OF ACTION
## Violation of 15 U.S.C. §1125(a) (TWINS OF EVIL INFRINGEMENT)

38.     Plaintiff repeats and realleges paragraphs 1 through 17, 19 through 27 and 29 through 37 of this Complaint as if fully set forth herein.

39.     This count arises under Section 43(a) of the Lanham Act relating to trademarks, trade names and unfair competition entitled "False Designation of Origin and False Descriptions Forbidden," 15 U.S.C. §1125(a), and involves false descriptions in commerce.

40.     The TWINS OF EVIL trademark has been used widely throughout the United States since 2012 when Rob Zombie and Marilyn Manson appeared in front of more than 200,000 fans on their first TWINS OF EVIL concert tour.  As a result of same, the TWINS OF EVIL trademark has developed and now has a secondary and distinctive trademark meaning to purchasers of goods including, but not limited to, t-shirts.

41.     The Bootleg Merchandise sold by Defendants, which contains the TWINS OF EVIL trademark is of the same general nature and type as the merchandise sold and/or authorized to be sold by Plaintiff.  Because the Bootleg Merchandise is so related to and indistinguishable from authorized merchandise that Plaintiff sells, it is likely to, and is certainly intended to, cause confusion to purchasers.

42.     Defendants, by misappropriating and using The TWINS OF EVIL trademark, have misrepresented and falsely described to the general public the origin and source of the Bootleg Merchandise so as to create the likelihood of confusion by the ultimate purchaser as to both the source and sponsorship of the Bootleg Merchandise sold at the TWINS OF EVIL concert dates.

43.     In addition, Defendants sale of the Bootleg Merchandise will infringe upon and dilute the TWINS OF EVIL trademark.

44.     The Bootleg Merchandise is in most instances of inferior quality and the sale thereof will be damaging to and will dilute the goodwill generated by Plaintiff, Rob Zombie and Marilyn Manson have developed in connection with the sale of legitimate and quality merchandise.

45.     Defendants' unlawful merchandising activities have been and will be conducted without the permission or authority of Plaintiff and said actions constitute express and implied misrepresentations that the Bootleg Merchandise was created, authorized or approved by Plaintiff, Rob Zombie and/or Marilyn Manson. Defendants have not obtained any license, authority or approval to manufacture, distribute or sell such Bootleg Merchandise.

46.     Defendants' acts are in violation of 15 U.S.C. §1125(a) in that Defendants will use, in connection with goods and services, a false designation of origin and have caused and will continue to cause said goods (the Bootleg Merchandise) to enter into interstate commerce.

47.     Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, will suffer irreparable harm and injury to Plaintiff's, Rob Zombie's and Marilyn Manson's images and reputations as a result thereof.

## DAMAGES

48.     Plaintiff repeats and realleges paragraphs 1 through 17, 19 through 27, 29 through 37 and 39 through 47 of this Complaint as if fully set forth herein.

49.     It is impossible to ascertain the amount of compensation that will afford Plaintiff adequate relief for Defendants' actual, threatened and contemplated unlawful activities and Plaintiff will have no adequate remedy in the event that such unlawful activities are allowed to occur.

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

1.      The Court issue a Temporary Restraining Order and a Preliminary Injunction restraining, enjoining and prohibiting Defendants from manufacturing, distributing or selling all merchandise bearing the ROB ZOMBIE, MARILYN MANSON and TWINS OF EVIL names, trademarks, logos and/or likenesses and/or anything confusingly similar thereto.

2.      The Court order the United States Marshal(s), state county and/or local law enforcement authorities to seize and impound any and all of the merchandise described in subdivision 1 above, which the Defendants attempt to sell or hold for sale outside of and within the confines of the concert halls at which Rob Zombie and Marilyn Manson are performing before, during or after Rob Zombie/Marilyn Manson/Twins of Evil concert performances.

3.      After a hearing on the merits, this Court issue a Permanent Injunction prohibiting Defendants from selling or attempting to sell merchandise described in subdivision 1 above and ordering seizure and destruction of all such merchandise wherever found.

4.      Such other and further relief that this Court deems to be reasonable, necessary and just.

Dated:  July 10, 2018                          Respectfully Submitted,

                                               BROWN & JAMES, P.C.


                                               By   /s/Elizabeth S. Silker
                                                     Elizabeth S. Silker, #57640MO
                                                     800 Market Street, Suite 1100
                                                     St. Louis, Missouri 63101
                                                     314. 242.5282, Fax: 314.242.5482
                                                     bsilker@bjpc.com

                                                     *ATTORNEYS FOR PLAINTIFF*